422 So.2d 222 (1982)
Oscar J. LEWIS, et al.
v.
Willie VARISTE, et al.
No. 13218.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1982.
*223 Peter S. Title, James Ryan, III, Sessions, Fishman, Rosenson, Boistontaine & Nathan, New Orleans, for defendants-appellees.
S. Reed Morgan, New Orleans, for plaintiffs-appellants.
Before KLEES, BYRNES and WARD, JJ.
KLEES, Judge.
Plaintiffs, Oscar J. Lewis, as administrator of the estate of his son, Leonard Lewis and Simone Lewis appeal from a judgment of the trial court, rendered pursuant to a jury verdict, dismissing suit for damages against defendants-appellees Alfred Pollar, Sr., Alfred Pollar, Jr., and State Farm Mutual Automobile Insurance Company. Plaintiffs' suit arises out of an accident which occurred when a motorcycle driven by David Variste on which plaintiffs' minor son Leonard Lewis was a passenger, rearended a vehicle driven by Alfred Pollar, Jr. The jury found David Variste negligent and awarded damages in the amount of $325,000 to Leonard Lewis and $15,000 to his father, Oscar J. Lewis. Prior to trial, however, the plaintiffs settled with defendants David Variste, Willie Variste, Jefferson Insurance Company and All State Insurance Company. The jury found that Alfred Pollar, Jr., was not negligent and dismissed the suit against Alfred Pollar, Sr., Alfred Pollar, Jr., and State Farm Insurance Company. Plaintiffs' motion for a new trial was denied, and plaintiffs appeal that ruling as well as the jury verdict and judgment thereafter contending 1) that the jury verdict was manifestly erroneous in that it was contrary to the law and/or evidence and 2) that the trial judge erred in denying plaintiff's motion for a new trial.
We can find no manifest error in the jury verdict nor in the denial of plaintiffs' motion for a new trial and, accordingly, we affirm.

FACTS
On the evening of November 11, 1978, defendant, Alfred Pollar, Jr., and his date, Julie Overstreet, attended a homecoming dance at John F. Kennedy Senior High School. The dance ended at 11:00 p.m. and *224 Alfred Pollar, Jr., Julie Overstreet, Kerwin Broussard and Claudette Nicholas made plans to meet at Claudette Nicholas' house. Alfred Pollar, Jr., was driving his father's automobile, accompanied by Julie Overstreet and Kerwin Broussard.
From the high school parking lot, Alfred Pollar, Jr., turned onto Wisner Boulevard proceeding southward in the right lane of the boulevard at a reduced rate of speed. The speed limit on the boulevard was thirty-five miles per hour. Pollar's car was followed from the parking lot by Claudette Nicholas' vehicle.
Several moments later, Diane Dileo, a teacher at Kennedy High School, drove past the Pollar car in her auto. Next, three motorcycles, all in the right lane, approached the Pollar vehicle from behind. The motorcycle which David Variste was driving was in the center of the right lane flanked by a motorcycle on each side driven by Variste's friends. When the Pollar vehicle came into sight, the motorcycle on the left side of Variste swerved to the left. The motorcycle to the right of him veered to the right off the road into the City Park ditch which runs along Wisner Boulevard. The Variste motorcycle, in the middle position, rear-ended the Pollar automobile. Appellant Leonard Lewis, the passenger on the motorcycle driven by David Variste, sustained serious injuries in the collision. The quantum awarded is not an issue in this appeal, and we will not discuss the extent and severity of these injuries.
Appellants assert that Alfred Pollar, Jr., was negligent in driving his car too slowly down Wisner Boulevard and that this was a proximate cause of the accident. Defendants contend that Pollar was not negligent because a reduced rate of speed was reasonable and necessary due to the dense fog in the area that night.
The appellate courts of this state are to review both the law and the facts in civil cases, whether the case is tried before a judge or jury. Storey v. State Farm Mutual Fire Insurance Co., 327 So.2d 687 (La.App. 1st Cir.1976), writ denied, 330 So.2d 309 (La.1976). The findings of fact by the trial judge or jury shall not be disturbed absent a positive showing that such findings are manifestly erroneous upon the face of the record. Storey, supra.
Because the trial court has the opportunity to evaluate live witnesses, the appellate court must give great weight to the factual conclusions of the trier of fact, even in cases of conflicting testimony. Weaver v. Otis Elevator Company, 399 So.2d 1268 (La.App. 4th Cir.1981).
Appellants contend that the jury verdict, being contrary to the law as charged and/or to the evidence establishing the facts, is manifestly erroneous and should be reversed. They further assert that the trial judge erred in denying the appellants' motion for a new trial.
The jury was instructed by the court that when an innocent person such as a guest passenger is injured as a result of a collision between two drivers, each driver is considered under the law to be guilty of negligence and has the burden of exculpating himself.
Sufficient evidence that defendant's reduced rate of speed was justified was adduced at trial for the jury to conclude that he met this burden.
Appellants contend that the evidence proved that the fog did not diminish visibility to an extent making it necessary or reasonable to slow to ten miles per hour, the speed Alfred Pollar, Jr. admitted he was traveling. They base this argument both on Diane Dileo's testimony that she was proceeding at thirty-five miles per hour without visibility problems as she passed the Pollar vehicle and on David Variste's statement in his deposition that he was driving his motorcycle thirty-five miles per hour before the accident occurred.
Our review of the record shows that each witness at trial testified that the area was covered by a dense fog on the evening of the accident and that visibility was limited. The speed limit on a street is fixed according to normal weather conditions, and a driver must reduce his speed when *225 the weather conditions create a hazardous driving situation.
LSA-R.S. 32:64 requires that "No person shall drive a vehicle on the highway within this state at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the ... condition of the weather...." On Wisner Boulevard, the speed limit was thirty-five miles per hour. It seems logical that when the weather conditions are less than optimum, such as the presence of heavy fog, a prudent driver would drive less than thirty-five miles per hour on this boulevard. The particular facts of this accident indicate that visibility was so impaired that it would be reasonable to conclude, as the jury did, that David Variste when driving at thirty-five miles per hour, was not driving at a safe speed. In his deposition, Variste stated that the fog was more dense where the accident occurred and that it was "like a cloud".
Appellants argue that Alfred Pollar, Jr., admitted that he was going only ten miles per hour at the time of the accident. This was, however, an approximation by the defendant. According to other testimony at trial, the jury could have reasonably believed that the defendant was driving faster. Julie Overstreet testified at trial that the Pollar vehicle was traveling between fifteen and twenty miles per hour. Claudette Nicholas stated that Pollar was driving at least ten miles per hour.
The most convincing testimony as to the speed of the automobile comes from Diane Dileo, a disinterested witness. She stated that she increased her speed to thirty-five miles per hour to pass the Pollar vehicle and after passing it slowed down to twenty-five to thirty miles per hour. She testified that as she passed the automobile, it was moving at a rate of twenty to twenty-five miles per hour.
Defendant cites LSA-R.S. 32:81 which furnishes the standard of care required of motorists following other vehicles. The statute provides in pertinent part: "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."
In interpreting this statute, the courts have held that a motorist who strikes a preceding motorist from the rear is presumed to have breached the standard of conduct prescribed in R.S. 32:81 and is therefore presumed negligent. Thus the following motorist bears the burden of proving that he was not negligent. Eubanks v. Brasseal, 310 So.2d 550 (La.1975).
To exonerate himself, Variste must have proven that he kept his vehicle under control, closely observed the vehicle ahead and followed at a safe distance under the circumstances. Eubanks, supra. The jury's finding that Variste did not meet his burden, as established by the jurisprudence, could have been based in part on his deposition wherein he stated:
"And I was riding, and I saw bright lights. And I hit my brakes and I lost control of my vehicle."
Following motorists have escaped liability for rear-end collisions by establishing that the forward vehicle, encountered in the dark, was stalled and unlighted; Vascoe v. State Farm Mutual Automobile Insurance Company, 260 So.2d 161 (La.App. 2nd Cir. 1972); or that the unpredictable driving of the preceding motorist created a sudden emergency that the following motorist could not reasonably have anticipated; Layfield v. Altazan, 255 So.2d 363 (La.App. 1st Cir.1971). The Pollar vehicle was not stalled and unlighted nor could Alfred Pollar's slow rate of speed be considered unpredictable or unanticipated in the existing heavy fog.
Appellants argue that the jury should not have believed the testimony of the defense witnesses as certain statements made at trial were inconsistent with prior statements made by the witnesses. If the testimony of a witness is inconsistent with a prior statement, the law as charged requires the jury to determine if the testimony of the witness must be discredited. It further allows the jury to decide what *226 weight to give to the testimony of a discredited witness.
In his deposition, Alfred Pollar, Jr., when asked if he saw this other motorcycle in his rear view mirror before he felt or heard the big bang, replied "not that I can really remember, no." In his testimony at trial, he said, "I can't tell whether it was a motorcycle light, car light or what. I remember looking in the rear view mirror for a split second or so and seeing the lights."
When reaching its verdict, the jury apparently did not feel the inconsistent testimony was on such a crucial point to warrant discrediting the entire testimony of Alfred Pollar, Jr. In a written statement made before trial, Kerwin Broussard, a guest passenger in the Pollar vehicle, said that the Pollar car had stopped to wait for Claudette. At trial, he testified that the car had not stopped but was traveling slowly. Appellants argue that this conflict indicates the unreliability of Kerwin Broussard's testimony.
This discrepancy in his testimony is on a more important issue. Kerwin Broussard testified at trial that his statement contained mistakes and that he had informed appellants' attorney of that when he signed the statement. The attorney, however, testified that Broussard was given an opportunity to correct any mistakes in his statement.
The trial testimony of all the witnesses to the accident convincingly shows that the Pollar vehicle was driving slowly down Wisner Boulevard rather than stopped. This testimony apparently was sufficient evidence for the jury to disregard Kerwin Broussard's earlier statement and to find that the car was moving.
Appellants argue that testimony of the defense witnesses was tainted by their meeting with counsel for defendant. At trial, however, these witnesses testified that the attorney merely told them to tell the truth. There is insufficient evidence to support the view that their versions of the story were altered or fabricated.
Considering all of the foregoing, we conclude that a finding by the jury that Alfred Pollar, Jr., was not negligent was amply supported by the evidence, and we can find no manifest error in the verdict of the jury or in the trial court's denial of the motion for a new trial.
The trial court assessed costs of the trial against appellants but held defendants liable for the costs of the motion for a new trial. Defendant asserts that appeal costs should be taxed against appellants; we agree and rely on New Orleans Shrimp Co., Inc. v. Duplantis Truck Lines, Inc., 283 So.2d 521 (La.App. 1st Cir.1973), where the court held that when the judgment of the trial court is affirmed, the appellant is responsible for all costs incidental to appeal.
Accordingly, for the reasons expressed herein, the judgment of the trial court is hereby affirmed, all costs to be borne by appellant.
AFFIRMED.