480 So.2d 337 (1985)
Harmon BOURQUE, Plaintiff-Appellee,
v.
GULF MARINE TRANSPORTATION, INC., et al., Defendants-Appellants.
No. 84-844.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
*338 Lloyd C. Melancon, New Orleans, Woodley & Associates, Clayton Davis, Lake Charles, for defendants-appellants.
Raleigh Newman, Lake Charles, for plaintiff-appellee.
Raymond Jackson of McBride & Foret, Lafayette, for defendant-appellee.
Before DOMENGEAUX, LABORDE and KNOLL, JJ.
KNOLL, Judge.
Chevron U.S.A. Inc. (hereafter Chevron), Gulf Marine Transportation, Inc., (hereafter Gulf Marine), Cameron Crewboats, Inc. (hereafter Cameron), and American Home Assurance Company (hereafter American), the insurer of Gulf Marine and Cameron, appeal a jury verdict in favor of Harmon Bourque for medical expenses, past and future lost wages, pain and suffering, and disability. Chevron contends: (1) there was no evidence showing that any act or omission by it or any defect, deficiency or ruin in its platform caused or contributed to Bourque's injuries; (2) in the alternative, the jury's allocation of fault between Chevron and Gulf Marine was not supported by the evidence; (3) the trial court erred in refusing to award it attorney's fees, costs incurred in defending this action and for indemnity from Gulf Marine and American; and (4) the trial court erred in denying its motion for a new trial because the jury's answers to special interrogatories were irreconcilably inconsistent. Gulf Marine, Cameron and American contend: (1) there was no evidence that their vessel, the M/V Pete McCall, or its crew, was the cause of Bourque's injuries; (2) the jury erred in failing to find Bourque contributorily negligent; and (3) the jury awards for future lost wages and disability were excessive and not supported by the record. Furthermore, appellants all argue that the trial court erred in denying their motions for a mistrial because of prejudicial and improper comments made by Bourque's attorney in closing argument. We affirm.

FACTS
Bourque sustained an injury one hundred miles offshore in the Gulf of Mexico when he attempted to transfer from the M/V Pete McCall to a Chevron platform. The Pete McCall was under time charter from Gulf Marine to Chevron. Bourque was employed as a welder for Danos and Curole Marine Contractors, Inc. (hereafter Danos).
Bourque and his father were unloading supplies and their welding equipment onto the platform and a standby boat. When they were finished, the captain of the Pete McCall positioned the vessel's stern against a ladder which extended from the landing platform down to the water. When Bourque attempted his transfer from the stern of the vessel to the platform's ladder, the Pete McCall rose in the waves crushing his right knee and thigh between the vessel's stern bumper tires and the platform's wooden beams which protected the ladder.
Bourque sued Gulf Marine and Chevron, asserting negligence claims against both, as well as a strict liability claim against Chevron. Chevron filed a third party demand *339 against Gulf Marine, Cameron, Danos and their insurers seeking defense and indemnity for Bourque's claim. Danos filed a petition for intervention seeking reimbursement for the workmen's compensation and medical expenses it paid Bourque.
The jury awarded Bourque $118,562 and allocated fault for the accident in the proportion of 25% to Gulf Marine and 75% to Chevron. Further, Danos was granted its claim for reimbursement, and the third party claims of Chevron against Gulf Marine, Cameron, Danos and their insurers were denied.

LIABILITY AND ALLOCATION OF FAULT
Chevron and Gulf Marine argue that the trial court erred in denying their motions for a directed verdict, judgment notwithstanding the verdict, and new trial. Each contend that Bourque failed to show any act of negligence on their individual part and failed to prove any "ruin" on the Chevron platform but that the other was the sole cause of Bourque's damages. Because of the posture of their arguments, we will address in order the question of possible inconsistency of the jury verdict, liability of the parties, contributory negligence of Bourque and the jury's allocation of fault.
Chevron contends that the jury's responses to verdict interrogatories one and seven are irreconcilably inconsistent and require either a remand of the case for a new trial or our independent appellate review of the questions of liability. We disagree.
Before a jury's response to a verdict interrogatory may be struck down there must be a determination that the responses are inconsistent with the general verdict. Andrepont v. Naquin, 345 So.2d 1216 (La. App. 1st Cir.1977). The verdict sheet provided as follows:
"VERDICT SHEET
1. Was Gulf Marine Transportation, Inc. negligent in connection with the plaintiff's accident and, if so, was this negligence a legal cause of the plaintiff's injuries?

YES X NO ____
2. Was Chevron U.S.A., Inc. negligent in connection with the plaintiff's accident and, if so, was this negligence a legal cause of the plaintiff's injuries?

YES X NO ___
3. Was Danos & Curole Marine Contractors, Inc. negligent in connection with the plaintiff's accident and, if so, was this negligence a legal cause of the plaintiff's injuries?

YES___ NO X
4. Was there a defect present in Chevron's Platform 564A posing an unreasonable risk of harm and, if so, was this defect a legal cause of the plaintiff's injuries?

YES X NO ___
If your answer to all of the above is "no", proceed no further. If your answer to any of the above is "yes", proceed to the next question.
5. Was the plaintiff, Harmon Bourque, negligent in connection with his accident and, if so, was his negligence a legal cause of his injuries?

YES ___ NO X
6. To what extent, if any, was each of the parties at fault for the accident?
GULF MARINE
TRANSPORTATION, INC. 25 %
CHEVRON U.S.A., INC. 75 %
DANOS & CUROLE MARINE
CONTRACTORS, INC. 0 %
HARMON BOURQUE 0 %
7. Did the accident arise out of and occur in connection with the management, navigation and operation of the M/V PETE McCall?

YES ___ NO X 

8. What damages did the plaintiff suffer as a result of his accident(s)?
SPECIAL DAMAGES:
Medical Expenses $ 1562.00 
Past Wages $ 10,000.00 
Future Wages $ 72,000.00 
Other (specify) ______
*340
_____________
_________________ $_____________
GENERAL DAMAGES:
Pain & Suffering $ 5,000.00 
Disability $ 30,000.00 
The alleged inconsistency between the answers to interrogatories one and seven was not called to the attention of the trial court at the reading of the verdict nor alluded to in any of Chevron's post-trial motions. By failing to object at the reading of the verdict or afterward, the trial court neither had the opportunity to address this issue nor take remedial action as provided in LSA-C.C.P. Art. 1813(C). In the absence of an objection properly raised in the trial court Chevron cannot now be heard on this issue.
After hearing all the evidence, the jury concluded that Chevron and Gulf Marine were negligent in causing Bourque's injuries and absolved Bourque from any fault in connection with the accident. Before an appellate court may overturn the findings of a jury, it must be determined that the jury's findings were clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
The Gulf Marine vessel and the Chevron platform had correlative duties to provide Bourque with a safe means of egress and ingress. The evidence preponderates that the seas were uneven and moderately rough. Bourque had only one available means of transfering from the vessel to the platform: he had to exit from the stern of the vessel, timing his leap to coincide with the peaks of the sea swells, to a ladder which extended from the landing platform down to the water, and then climb the ladder to the landing area. The ladder was recessed between 12 × 12 inch wooden beams to protect it from damage.
Bourque presented several allegations which formed the basis of the jury's imposition of liability on Chevron. The Chevron platform posed an unusual risk because its landing area was located well above the water line; a rope, which is usually available to help a person transfer to the landing, was frayed and too short to provide assistance; and the wooden beams which protected the ladder were splintered and may have caused Bourque to become hung up as he attempted the transfer. In addition Chevron stipulated that there was no personnel basket on the platform to help transfer workers from the vessel to the platform in rough seas.
Gulf Marine's liability was likewise premised on a variety of allegations proven at trial which are: Gulf Marine's captain failed to securely position the vessel against the platform in moderate to rough seas, thus making Bourque's transfer more difficult; a large cargo box obstructed the captain's view of Bourque as he attempted to transfer, and prevented him from learning of Bourque's plight as soon as difficulties arose; and, furthermore, considering the conditions at sea, the captain neither attempted to dock the vessel in an alternative position to permit a direct transfer to the landing nor radioed personnel on the Chevron platform to assist Bourque at the landing.
After thoroughly reviewing the record, we cannot say that the jury committed manifest error in finding Chevron and Gulf Marine liable for Bourque's injuries.
Gulf Marine also argues that the jury erred in failing to find Bourque contributorily negligent. Contributory negligence is a question of fact determined in light of the circumstances of the case. Soileau v. South Cent. Bell Tel. Co., 406 So.2d 182 (La.1981). Factual questions are left to the jury and their findings should not be disturbed unless they are clearly erroneous. Bordelon v. Southern La. Health Care Corp., 467 So.2d 167 (La.App. 3rd Cir. 1985), writ denied, 469 So.2d 989 (La.1985). Based on the evidence before us, we conclude that the jury's determination that Bourque was free from fault was not clearly erroneous.
Chevron and Gulf Marine contend that the jury's allocation of fault between them was not supported by the evidence. We disagree. The manifest error rule is *341 applicable to the fact-finder's allocation of fault. Thomas v. Missouri-Pacific R. Co., 451 So.2d 1152 (La.App. 3rd Cir.1984), reversed on other grounds, 466 So.2d 1280 (La.1985). Accord: Triangle Trucking Co. v. Alexander, 451 So.2d 638 (La.App. 3rd Cir.1984); McKinley v. Bekins Moving & Storage Co., 449 So.2d 705 (La.App. 5th Cir.1984), writ denied, 456 So.2d 167 (La. 1984); Varnado v. Continental Ins. Co., 446 So.2d 1343 (La.App. 1st Cir.1984). The fact-finder's role in judicial decision making is to weigh the credibility of witnesses, resolve conflicts and inconsistencies in testimony and, absent a showing of manifest error, an appellate court will not disturb that decision. Canter v. Koehring Company, 283 So.2d 716 (La.1973). After our careful study of the record, we cannot say that the jury's allocation of fault between Chevron and Gulf Marine was clearly wrong.

CHEVRON'S INDEMNITY AND RIGHT TO A DEFENSE
Chevron contends that the trial court erred in its dismissal of Chevron's third party claim against Gulf Marine and American for attorney's fees and costs incurred in defending against Bourque's claim and for indemnity as provided in its time charter agreement with Gulf Marine.
Chevron's time charter agreement with Gulf Marine provides in pertinent part:
"Owner [Gulf Marine] hereby agrees to defend, indemnify and hold harmless Chevron against all claims for taxes or for penalties or fines, as well as against any and all claims for damages, whether to person or property, and howsoever arising in any way directly or indirectly connected with the possession, navigation, management, and operation of the vessel. However, Chevron shall have the right, at its option, to participate in the defense of any suit without relieving Owner of any obligation hereunder. During the life of this charter, owner will, at its own expense, provide and maintain insurance covering all liabilities which might arise from the possession, management, manning, navigation and operation of the vessel, which said policies shall be in form and amount, and with companies as required and approved by Chevron; and on which policies Chevron shall be included as party assured and all rights of subrogation against Chevron shall be waived."
The policy of insurance in which Chevron is designated as an additional insured is integral to our determination of the scope of Chevron's entitlement to a defense from American. Although the parties stipulated that at the time of the accident a policy issued by American was in force and effect, in our review of the record we fail to find a policy of insurance. The certificate of insurance introduced as evidence is of no assistance since the policy provisions which define American's obligations are not contained therein. We note that a purported uncertified copy of the American policy was attached to the deposition of Phillip McCall. Depositions not offered into evidence cannot be considered on appeal. Sizeler v. Sizeler, 375 So.2d 122 (La.App. 4th Cir. 1979), writ denied, 376 So.2d 960 (La. 1979); State, Department of Highways v. Colby, 321 So.2d 878 (La.App. 1st Cir. 1975), writ denied, 325 So.2d 278 (La.1976). We cannot find where the McCall deposition or its attached exhibits were formally introduced into evidence; therefore, we must treat the record as though the American insurance policy is not physically present.
Chevron's claim for indemnity also falls. Under the clear language of the time charter, Gulf Marine's duty to indemnify was restricted to claims arising "... with the possession, navigation, management, and operation of the vessel." Gulf Marine fully defended Bourque's claims against the vessel and it had no duty to indemnify Chevron for the 75% fault apportioned to Chevron as the result of the condition of its platform. As the learned trial judge ably stated in his written reasons:

"... [T]he jury found that Chevron's contribution to plaintiff's injuries occurred independently of the [possession, navigation, management and] operation *342 of the vessel. The time charter agreement cannot be construed to have Gulf Marine indemnify Chevron for this claim. The language of the time charter is the law between the parties."

After reviewing the evidence, we cannot say that the trial court was erroneous in its determinations of these issues.

DAMAGES
American, Gulf Marine and Cameron contend that Bourque's awards for future lost wages and disability are excessive and are not substantiated by the evidence. The jury awarded Bourque $72,000 for future lost wages and $30,000 for disability. They direct us to no specific evidence of abuse in the trial record and cite no authority regarding excessiveness.
Before an appellate court can disturb the jury's award of damages, the record must clearly reveal that the trier of fact abused its discretion in making its award. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La. 1983). To question the inadequacy or excessiveness of a damage award, the reviewing court must first look to the individual plaintiff and the circumstances of the case before it. Reck v. Stevens, 373 So.2d 498 (La.1979); Benson v. Seagraves, 445 So.2d 187 (La.App. 3rd Cir.1984), writ denied, 447 So.2d 1071 (La. 1984). Damages for future loss of earnings are speculative and cannot be calculated with absolute certainty. Robinson v. Graves, 343 So.2d 147 (La.1977).
Bourque is 22 years of age and, according to the medical testimony, has a 10% partial permanent disability of the right leg which will cause him pain and limit his ability to work for the remainder of his life. Climbing, carrying heavy objects and cold weather aggravate the injury. It was uncontradicted at trial that Bourque has lost two and one-half to three months of work each year since the accident because of the condition of his right leg.
Accordingly, we find no abuse in the jury's great discretion in its assessment of Bourque's damages.

REMARKS IN CLOSING ARGUMENT
Chevron, Gulf Marine, Cameron and American argue that the trial court should have granted a mistrial because counsel for Bourque made improper and prejudicial remarks to the jury in his closing argument.
The propriety of argument in a civil jury trial must be determined in the factual light of the particular matter, the conduct and atmosphere of that particular trial and the arguments of opposing counsel. Luquette v. Bouillion, 184 So.2d 766 (La.App. 3rd Cir.1966). Great latitude is permitted in argument before a civil jury, subject to regulation by the trial court whose duty is to confine argument within proper bounds. Temple v. Liberty Mutual Insurance Company, 316 So.2d 783 (La.App. 1st Cir. 1975), reversed on other grounds, 330 So.2d 891 (La.1976); Luquette, supra. Unless the contrary is shown, the trial court's rulings regarding alleged improper argument are presumed to have been made within the trial court's discretion. Luquette, supra.
Argument is first leveled that Bourque's counsel used the issue of prescription to prejudice the jury against Chevron. It is improper for counsel to state points of law. Wexler v. Martin, 367 So.2d 111 (La.App. 4th Cir.1979), writ denied, 369 So.2d 1352 (La.1979). Chevron's argument is, however, without merit, because the trial court properly intervened and cut off the argument of Bourque's counsel on the question of prescription before it reached a point prejudicial to Chevron. Likewise, there was no prejudice in suggesting a damage award to the jury, or commenting that the jury should not consider attorney's fees, court costs or the tax free character of a damage award; references to the taxes, attorney's fees and court costs, though best addressed in the trial judge's charges to the jury (which was also done in this case), did not prejudice defendants.
Lastly, the argument is made that Bourque's counsel improperly suggested that the jurors place themselves in Bourque's shoes. Appeals to sympathy as long as they are based on the facts of the case, are *343 not ordinarily considered improper and furnish no ground for complaint. Temple, supra; 88 C.J.S. Verbo Trial, Sec. 191, p. 375. Read in the full context of counsel's argument, Bourque's counsel made reference to the facts of the accident and did not unduly play on the jurors' sympathies so as to prejudice the defendants. Compare: Morgan v. Liberty Mutual Insurance Company, 323 So.2d 855 (La.App. 4th Cir. 1975), cert. dismissed, 325 So.2d 282 (La. 1976). Therefore, we find that it was not erroneous for the trial court to deny the motions for a mistrial.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed equally between Chevron, Gulf Marine, Cameron and American.
AFFIRMED.